**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LESLIE COURTNEY | |
|         Plaintiff, | |
| | |
| v. | |
| | C.A. No. |
| PAPA, INC. | |
| | |
|         Defendant. | |

**COMPLAINT**

Plaintiff Leslie Courtney ("Plaintiff" or "Ms. Courtney") brings this action against Papa, Inc. ("Papa" or "Defendant") to assert her rights and to remedy the harassment, discrimination, and retaliation she endured on the basis of her sex/gender.

Plaintiff seeks compensatory and punitive damages, attorneys' fees and costs, and injunctive and other equitable relief arising out of violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, *et seq.* ("Chapter 151B").

**THE PARTIES**

1.	At all relevant times, Ms. Courtney was a resident of the Commonwealth of Massachusetts, and Ms. Courtney was an employee of Papa as that term is defined by Title VII and Chapter 151B until the date of her involuntary termination on March 30, 2022.

2.	Papa is a foreign corporation with its principal place of business located at 66 SW 6th Street, Miami, FL 33130. Papa is registered to conduct, and in fact conducts, business within the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

3.     This Court has federal question and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 because the federal law claims arise under the constitution and statutes of the United States, and the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the United States Constitution.

4.     This Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332 because the parties to the case are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

5.     This Court has personal jurisdiction over Papa because it is registered to conduct business with the Commonwealth of Massachusetts and, in fact, conducts substantial business within the Commonwealth of Massachusetts.

6.     At all relevant times, the actions and events discussed herein transpired within the Commonwealth of Massachusetts.

7.     Venue for this action properly lies in this district court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.     On June 7, 2022, Plaintiff filed an administrative Charge of Discrimination with both the Massachusetts Commission Against Discrimination ("MCAD"), MCAD Charge No. 22NEM01361, and the United States Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 16C-2022-01579, against Papa and three individually named respondents (Andrew Parker, Charles Hector, and Priyanka Gupta) alleging gender/sex-based harassment and discrimination and retaliation in violation of Title VII and Chapter 151B.

9.      Thereafter, in accordance with M.G.L. § 151B, § 9, Plaintiff elected to withdraw her complaint from both the MCAD and the EEOC and to commence action in this Court.

10.     On October 30, 2024, Plaintiff received notice from the MCAD that her complaint had been dismissed after being withdrawn pursuant to 804 C.M.R. § 1.04(12) (2020).

11.     On October 31, 2024, Plaintiff received a Dismissal and Notice of Right to Sue from the EEOC.

12.     Accordingly, Plaintiff has timely and properly exhausted her administrative remedies and satisfied all pre-conditions to bring the within action.

## FACTUAL ALLEGATIONS

13.     In or around June 2019, Papa hired Plaintiff into the position of Executive Vice President of Client Success located in Attleboro, MA.

14.     During all relevant time periods, Plaintiff worked remotely for Papa at her residence in Attleboro, Massachusetts.

15.     During all relevant time periods, Plaintiff reported directly to Charles Hector ("Mr. Hector"), Papa's Chief Revenue Officer.  During all relevant time periods, Mr. Hector was Plaintiff's direct manager and supervisor.  As a senior executive, Mr. Hector was an agent of Papa.

16.     During all relevant time periods, Plaintiff's work performance was satisfactory and met Defendant Papa's legitimate expectations as evidenced by, among other things, her January 2022 performance review.

## Plaintiff's Reports of Gender/Sex-Based Pay Equity

17.     At various points throughout 2021 and 2022, Plaintiff reported what she reasonably believed to be issues of gender/sex-based pay disparities amongst Papa's employees to Priyanka Gupta ("Ms. Gupta"), Papa's Head of People and Culture, and others.

18.     For example, in September 2021, Plaintiff requested that Ms. Gupta and Dani Bchara, Papa's Chief Financial Officer, evaluate the total compensation, including, but not limited to, base salary, bonus, and distribution of stock equity, of members employed within Papa's Client Success department, which consists predominantly of female employees.

19.     Prior to Plaintiff's request, there had never been a formal analysis of competitive and appropriate base salaries or bonuses for the five (5) positions within Papa's Client Success department. Additionally, Papa did not have a documented, communicated, or consistent formula for the distribution of stock equity.

20.     Upon information and belief, Papa's male employees in other departments received higher levels of compensation, benefits, and equity as compared to its female employees, including female employees in Papa's Client Success department.

21.     Throughout 2022, Plaintiff consistently requested a summary of Papa's stock issuance and strike price and valuation for every employee on her team so that she could evaluate pay equity and make recommendations as necessary.

22.     However, Papa failed and/or refused to provide her with the requested summaries and took no steps to review and/or correct these perceived pay, benefit, and equity discrepancies.

## Mr. Hector's Paternalistic, Bigoted, Discriminatory, Harassing, and Retaliatory Conduct

23.     During all relevant time periods, Papa's upper management, including, but not limited to, Mr. Hector, harbored discriminatory animus on the basis of gender/sex, exhibited

4

paternalistic and gender/sex-based stereotypical behaviors in the workplace, and treated female employees, including Plaintiff, considerably less favorably than similarly situated male employees in their compensation and other terms and conditions of employment.

24.    Because Plaintiff engaged in numerous acts of protected conduct concerning the gender/sex-based harassment, discrimination, and retaliation to which Plaintiff and her coworkers were subjected during their employment, Papa subjected Plaintiff to a hostile work environment.

25.    For example, on multiple occasions, Mr. Hector, Plaintiff's manager and direct supervisor, told Plaintiff that it was his belief that the role of client success is a female role, while the role of new business sales is a male role. On their face, such comments displayed Mr. Hector's pervasive and discriminatory biases with regard to perceived sex/gender roles.

26.    Mr. Hector has also told Plaintiff that he believes women are better at developing client relationships, while men are better at developing sales. Again, such comments displayed Mr. Hector's pervasive and discriminatory biases with regard to perceived sex/gender roles on their face.

27.    As another example, Mr. Hector asked a female Vice President at Papa (Ann Mello ("Ms. Mello")), who was Plaintiff's direct report, if she would be his "side-piece" for $200,000 at an off-site meeting in Nashville.  Upon information and belief, Ms. Mello refused Mr. Hector's sexual proposition.

28.    Plaintiff found Mr. Hector's comments to be offensive, and she reasonably believed they constituted gender/sex-based harassment and discrimination, in part, because the comments made Plaintiff feel uncomfortable and unsafe working with and around Mr. Hector.

29.    Mr. Hector also scrutinized Ms. Mello's use of PTO time without justification, and he requested that Plaintiff fire Ms. Mello for what he said was an excessive use of PTO even

though, upon evaluation by Papa's human resources department, Ms. Mello was well within her allowed usage of PTO benefits.

30.     As a result, Plaintiff reasonably believed that Mr. Hector treated Ms. Mello in this manner because of Ms. Mello's gender/sex and because Ms. Mello refused Mr. Hector's sexual proposition.

31.     Plaintiff reasonably believed that Mr. Hector's open and overt scrutinization of Ms. Mello constituted gender/sex-based harassment and discrimination in part because the comments made Plaintiff feel uncomfortable and unsafe working with and around Mr. Hector. More specifically, such comments reasonably made Plaintiff fear that she would be punished, scrutinized, or retaliated against if she were to ever have to rebuff Mr. Hector's sexually explicit and inappropriate advances.

32.     As another example, Papa adopted a paternity leave policy pursuant to which male employees were eligible for up to 16 weeks paid leave in the first year of their child's life. Thereafter, a member of Plaintiff's team, Max Alderman ("Mr. Alderman"), a Client Success Executive whom Plaintiff managed at Papa, welcomed his first child in January 2022, and he elected to take 8-weeks of paternity leave from January 2022 through mid-March 2022 followed by another 8-weeks of paternity leave during the summer of 2022.

33.     When Mr. Hector learned of Mr. Alderman's request, he instructed Plaintiff to unlawfully harass, discriminate, and retaliate against Mr. Alderman because of his requested use of paternity leave.  For example, Mr. Hector told Plaintiff that "…if he [Mr. Alderman] takes that time off, you make sure that he has the worst account portfolio when he returns."

34.     Plaintiff opposed Mr. Hector's request by refusing his instruction, which Plaintiff reasonably believed constituted gender/sex-based harassment, discrimination, and retaliation with respect to Mr. Alderman.

35.     In doing so, Plaintiff explained to Mr. Hector that she had a staffing plan to cover Mr. Alderman's accounts while he was on paternity leave and would be able to transition him back to the same accounts when he returned without issue.  Mr. Hector took issue with Plaintiff's opposition and continued to tell Plaintiff how ridiculous he thought it was for Mr. Alderman, as a man, to "stay home and change diapers all day" – because, according to Mr. Hector, he believed that childcare was a "woman's job."

36.     Plaintiff found Mr. Hector's comments to be offensive and reasonably believed they constituted gender/sex-based harassment, discrimination, and retaliation with respect to both Plaintiff and Mr. Alderman because such comments, on their face, further exhibited Mr. Hector's discriminatory biases related to sex and gender roles.

37.     Despite Mr. Hector's insistence, Plaintiff continued to oppose his directive to harass, discriminate, and retaliate against Mr. Alderman, and when Mr. Alderman returned from paternity leave in mid-March 2022, Plaintiff transitioned him back to the same portfolio of accounts he had prior to paternity leave.

38.     As another example, Mr. Hector ridiculed a female Senior Vice President (Andrea Elmore ("Ms. Elmore")), who was Plaintiff's direct report at Papa, because her husband was a stay-at-home dad, further evidencing Mr. Hector's paternalistic and discriminatory belief that a woman's role was to stay at home and take care of the children, while a man's role was to go to work.

39.     Plaintiff found Mr. Hector's comments to be offensive and reasonably believed they constituted gender/sex-based harassment and discrimination because such comments, on their face, exhibited Mr. Hector's discriminatory biases related to sex and gender roles.

40.     Mr. Hector also regularly ridiculed Papa employees on a personal and professional level in the presence of other employees and engaged in discriminatory name calling and gender/sex-based harassment directed his subordinates.

41.     For example, Mr. Hector, on multiple occasions and in Ms. Courtney's presence, called an openly gay male subordinate at Papa a "faggot," and that same employee informed Plaintiff that Mr. Hector had inappropriately touched him.  Plaintiff found Mr. Hector's comments and conduct to be offensive and reasonably believed that they constituted unlawful harassment and discrimination based on the employee's gender/sex and sexual orientation.

42.     On at least one occasion, Mr. Hector pressured Plaintiff to exclude the employee referenced in the preceding paragraph from a client event that Plaintiff organized because Mr. Hector was afraid the employee "would make a spectacle" of himself.  Plaintiff believes Mr. Hector did so because of his discriminatory views against homosexuality. Plaintiff found Mr. Hector's comments and conduct to be offensive and reasonably believed they constituted gender/sex-based harassment and discrimination because such comments, on their face, exhibited Mr. Hector's discriminatory biases related to sex, gender roles, and sexual orientation.

43.     Plaintiff also became aware that a sales employee had to seek counseling due to the abhorrent way Mr. Hector treated him.  When Mr. Hector found this out, he revealed this employee's identity to Plaintiff (along with the fact that this employee sought counseling), and Mr. Hector ridiculed how "weak" he thought this employee was to need counseling.  Plaintiff found Mr. Hector's comments to be offensive and reasonably believed they constituted gender/sex-based

harassment and discrimination—they facially exhibited Mr. Hector's inappropriate, insensitive, and discriminatory beliefs concerning sex/gender roles and dispositions.

44.    On or about November 15, 2021, Plaintiff complained about Mr. Hector's inappropriate and unprofessional conduct directly to Andrew Parker ("Mr. Parker"), Papa's Founder and Chief Executive Officer.  This was not the first complaint that Plaintiff made to Mr. Parker about Mr. Hector's conduct.

45.    On that same day, a similarly situated male Executive Vice President at Papa also complained to Mr. Parker about Mr. Hector's inappropriate and unprofessional conduct.

46.    However, neither Mr. Parker nor anyone else at Papa investigated and/or took any corrective action concerning Mr. Hector as a result of Plaintiff's complaint, and Mr. Hector's gender/sex-based harassment, discrimination, and retaliation continued unchecked, and it got worse.

47.    All of the foregoing circumstances, occurrences, and conduct contributed to Papa's creation of a hostile work environment where Plaintiff reasonably feared that she, and other employees, would be subjected to harassment and discrimination on the basis of gender, sex, and/or sexual orientation.

**Papa's Harassing, Discriminatory, and Retaliatory Practices Related to Plaintiff's Performance Review**

48.    On or about January 2, 2022, Plaintiff completed her 2021 Self Reflection & Performance Review Cycle.

49.    On January 5, 2022, Mr. Hector, as Plaintiff's direct manager, made several comments on her 2021 Self Reflection & Performance Review Cycle including, but not limited to, "…Leslie is the perfectly skilled leader to manage us through this with assiduous and confidence"

and "100% retention for 2022 was an incredible feat and truly impressive. It was without a doubt a combination of the dogged work of Leslie's team...".

50.     Through Plaintiff's position, she was aware that she was entitled to either a 2%, 4%, or 6% merit-based pay increase based on her documented performance. Thus, due to her overwhelmingly positive performance review, Plaintiff should have received a merit-based pay increase of at least 6%.

51.     However, Plaintiff was shocked to learn that Mr. Hector gave her the lowest allowable merit-pay increase of 2%, and that Mr. Hector reduced Plaintiff's 2021 yearend bonus by the same 2%, which directly offset her merit-pay increase. Thus, in net total, Papa, through Mr. Hector, provided Plaintiff with an effective pay freeze for 2022.

52.     By contrast, on or about December 13, 2021, Papa, through Mr. Hector, provided the similarly situated male Executive Vice President who had also complained to Mr. Parker about Mr. Hector's inappropriate and unprofessional conduct on the same day as Plaintiff with a substantially greater pay increase than Plaintiff. Papa, through Mr. Hector, provided the similarly situated male Executive Vice President with a larger percentage increase to his annual base salary for 2022 along with his full year-end bonus for 2021, and Mr. Hector substantially increased the employee's eligibility for annual variable compensation to $654,000. This occurrence reinforced Plaintiff's belief that she should have been and was entitled to receive a greater merit-pay increase than what she had received.

53.     Upon information and belief, sometime between November 15, 2021 and December 13, 2021, Mr. Hector met with the similarly situated male Executive Vice President for the purpose of regaining his trust in the male executive after said executive lodged his complaint against Mr. Hector. It was only after this meeting that Mr. Hector authorized the payments

referenced in the preceding paragraph. Neither Mr. Hector, nor anyone else at Papa, offered Plaintiff a similar opportunity to regain her "trust" after filing her complaint against Mr. Hector with Mr. Parker.

54. Plaintiff therefore reasonable believed that she did not receive a greater merit-based pay increase or an opportunity to "regain Mr. Hector's trust" because of her sex/gender.

55. On February 9, 2022, Plaintiff had a regularly scheduled, bi-weekly meeting with Mr. Hector. During this meeting, Plaintiff inquired and complained about her 2% salary increase – which amounted to an effective pay freeze due to her corresponding 2% reduction in her 2021 year-end bonus that was payable in 2022 – because she knew Mr. Hector had the discretion to award her a significantly higher increase based on her aforementioned 2021 Self Reflection & Performance Review Cycle, and because Plaintiff knew others – including the similarly situated male Executive Vice President referenced above – had received significantly larger pay increases while receiving 100% of their annual 2021 year-end bonus.

56. In response to Plaintiff's inquiry, Mr. Hector openly admitted that he had retaliated against Plaintiff—confirming Plaintiff's belief—by stating: "I had to take into consideration that you went to Andrew [Parker] to complain about me, and I need people on my team that I can trust."

57. At the time, Plaintiff perceived Mr. Hector's comments as a clear threat to stop filing complaints of perceived harassment, discrimination, and retaliation against him to anyone at Papa, including the CEO or Human Resources.

58. Mr. Hector then made a series of additional threats against Plaintiff at that meeting, which Plaintiff perceived as gender/sex-based harassment, discrimination, and retaliation.

59. For example, Mr. Hector told Plaintiff that he "knows everything that anyone says to [Mr. Parker]" and that he and Mr. Parker are "best friends."

60.     Mr. Hector told Plaintiff that Mr. Parker did not want to hire her and that he pushed for Plaintiff to get the job and therefore has done "a lot" for her.

61.     Mr. Hector then explicitly threatened to demote Plaintiff by placing a new executive in her Client Success department to whom she would report.

62.     Mr. Hector further threatened Plaintiff by instructing her not to bring any complaints about him or the employment conditions at Papa to any other person—instead, Mr. Hector instructed her to bring any future complaints directly to him.

63.     Mr. Hector's threat was contrary to Papa's non-harassment policy and sexual harassment policy, which covered claims of harassment of any employee on the basis of sex or gender, including, but not limited to, "conduct directed toward a person because of his or her gender," which instructed employees to report sexual harassment to any member of management, and which stated that every report of perceived harassment will be fully investigated and corrective action taken where appropriate.

64.     Upon information and belief, neither Mr. Hector nor anyone else at Papa made similar threats to the male Executive Vice President who had complained about Mr. Hector to Mr. Parker.  Instead, Mr. Hector and Mr. Parker authorized a substantial increase in compensation for that male Executive Vice President after Mr. Hector met with him to regain his "trust" – an opportunity that Plaintiff did not receive.

65.     In response, and in opposition to Mr. Hector's intimidating, threatening, and retaliatory comments, Plaintiff asked Mr. Hector to send her a copy of her performance review because, although it was company practice for managers to share and release performance reviews with their direct reports, Plaintiff had not received notification of the review being available prior to this February 9, 2022, meeting.

66.     Mr. Hector became visibly angry and annoyed by Plaintiff's request and indicated, for the first time, that he was not pleased with Plaintiff's performance by stating that Plaintiff had "not grown into [her] role of EVP as the company grew."

67.     But these verbal comments directly belied Mr. Hector's written remarks in Plaintiff's performance review, thus, evidencing that they were made up to further his harassment and retaliation against Plaintiff for the complaints and other opposition that she made prior to and during this meeting.

68.     In addition to being retaliatory, Mr. Hector's conduct also constituted continued gender/sex-based discrimination and harassment.   Indeed, when Plaintiff – a top-performing female Executive Vice President – complained to the CEO about Mr. Hector's harassing, discriminatory, and other inappropriate conduct, Plaintiff received an effective pay freeze because, according to Mr. Hector, she could not be "trusted"; however, when a similarly-situated male Executive Vice President complained about Mr. Hector's inappropriate conduct to the CEO on the same day, he was provided the opportunity to regain Mr. Hector's trust within days of his complaint, and he then received his full year-end bonus for 2021, a greater merit-based pay increase than Plaintiff for 2022, and a substantially increased opportunity to earn $654,000 in variable compensation.   This constituted gender/sex-based discrimination, harassment, and retaliation.

69.     These occurrences further perpetuated the hostile work environment and led Plaintiff to fear being subjected to further gender/sex-based harassment, discrimination, and retaliation.

## Plaintiff's February 14, 2022 Complaint to Human Resources

70. On or about February 14, 2022, Plaintiff filed a complaint against Mr. Hector, this time with Papa's Head of People and Culture, Ms. Gupta. Plaintiff's February 14, 2022 complaint alleged retaliation and gender/sex-based harassment based on hostile work environment affecting Plaintiff and Plaintiff's co-workers.

71. Upon information and belief, Papa hired an out-house law firm to investigate Plaintiff's February 14, 2022 complaint. Plaintiff participated in this investigation by, among other things, meeting with Ms. Gupta on February 15, 2022, and then meeting with the out-house lawyers investigating the complaint for approximately 2-hours on February 18, 2022.

72. During her interview with the out-house lawyers, which Plaintiff was informed was being recorded, Plaintiff reported and opposed several instances of Mr. Hector's gender/sex-based discrimination, harassment, and retaliation involving Plaintiff and her co-workers.

73. For example, Plaintiff reported Mr. Hector's gender/sex-based discrimination and harassment directed at her female co-worker, Ms. Mello, by describing to them how Mr. Hector had asked Ms. Mello to be his "side piece" for $200,000 and how Mr. Hector had then improperly scrutinized Ms. Mello's PTO usage when she refused his sexual proposition.

74. As another example, Plaintiff reported Mr. Hector's gender/sex-based discrimination and harassment directed at her female co-worker, Ms. Elmore, by describing how Mr. Hector ridiculed her because her husband was a stay-at-home dad.

75. As another example, Plaintiff reported Mr. Hector's gender/sex-based and sexual-orientation-based discrimination, harassment, and alleged assault directed at her openly gay male co-worker, by describing how Mr. Hector had called him a "faggot" on multiple occasions in her presence, how Mr. Hector had, according to the employee, inappropriately touched him, and how

Mr. Hector had pressured Plaintiff to exclude him from a client event that Plaintiff organized because Mr. Hector was afraid the employee "would make a spectacle" of himself.

76.     As another example, Plaintiff reported Mr. Hector's gender/sex-based discrimination and harassment directed at her co-worker, Mr. Alderman, by describing how Mr. Hector had pressured Plaintiff to fire and engage in other acts of retaliation against Mr. Alderman for exercising his right to take paternity leave for his newborn child, which Plaintiff opposed by refusing Mr. Hector's directives.

77.     After the conclusion of Plaintiff's interview, neither Papa nor the out-house law firm provided Plaintiff with a copy of any findings or report from the out-house lawyers' purported investigation of her complaints and opposition to unlawful harassment, discrimination, and retaliation involving Plaintiff and her co-workers.

78.     Papa has also refused to provide Plaintiff with a copy of the recording of her February 2022 interview with the out-house attorneys.  Upon information and belief, Papa destroyed all evidence of such recording and/or directed that such evidence be destroyed to conceal the true nature of her complaints against Mr. Hector.

79.     Despite Plaintiff's reports of indisputable acts of gender/sex-based and sexual-orientation-based harassment, discrimination, and retaliation, Papa did not take reasonable, appropriate, or prompt steps to investigate Plaintiff's complaints or to remedy the unlawful harassment, discrimination, and harassment that she reported.

80.     As a result, Plaintiff continued experiencing gender/sex-based harassment and discrimination from Mr. Hector after her February 18, 2022, interview, which got even worse after March 3, 2022.

81.     Plaintiff also continued experiencing retaliatory conduct from Mr. Hector related to her complaints of gender/sex-based harassment and discrimination after her February 18, 2022, interview, which got worse after March 3, 2022.  Mr. Hector purposefully excluded Plaintiff from important meetings and tasks from March 3, 2022 through the date of Plaintiff's involuntary termination on March 30, 2022, which was detrimental to Plaintiff's ability to perform her essential job functions and to succeed and advance as an executive at Papa.  These meetings included internal meetings with executives and other employees of Papa, as well as external meetings with current and potential clients of Papa. During this period, Mr. Hector also intentionally took assignments and responsibilities that fell under her position as Executive Vice President of Client Success and assigned them to others at Papa.

82.     As one example, Mr. Hector reassigned an important project that impacted the entire Client Success team, and therefore was under Plaintiff's responsibility, to a lower-level executive, Ms. Andrea Elmore, SVP of Client Success, without notice to Plaintiff. In doing this, it not only removed Plaintiff from the assignment responsibility, but it also undermined Plaintiff's authority over the strategic direction of the project resulting in lack of credibility with her team, the client, and her peers.  As another example, Mr. Hector excluded Plaintiff from upsell opportunity communications within the Client Success portfolio of clients and instead involved the aforementioned male Executive Vice President to work on these lucrative revenue opportunities, pursuant to Mr. Hector's stated belief that men are better equipped than women when it comes to sales.

83.     Mr. Hector had also directed Plaintiff to bring all her complaints directly to him, which would include all complaints concerning his conduct that occurred after March 3, 2022, and Mr. Hector coupled this directive with threats of further harassment and retaliation, which deprived

Plaintiff of her right to raise her gender/sex-based claims of harassment and retaliation concerning Mr. Hector to Papa's human resources department and/or to external employment discrimination agencies, such as the EEOC and the MCAD.

84. As a result, between February 18, 2022, and at least March 23, 2022, Plaintiff was precluded by Mr. Hector from raising additional complaints concerning Mr. Hector's continued gender/sex-based discrimination, harassment, and retaliation internally to Papa or externally to the EEOC or the MCAD.

85. Papa's directive preventing Plaintiff from filing additional complaints and its concomitant failure to otherwise address Plaintiff's previously filed complaints only made Plaintiff's fears of continued gender/sex-based harassment, discrimination, and retaliation grow.

86. On March 23, 2022, Papa finally purported to respond to Plaintiff's complaints. On that day, Ms. Gupta sent Plaintiff an email stating that "the investigation of [Plaintiff's] retaliation complaint has been completed," and that "[t]he investigator did not find evidence of retaliation given that [Plaintiff] received an annual bonus that almost doubled [Plaintiff's] compensation for this year and, based on that, Chuck [Hector] could not justify a salary increase above 2%, particularly because there were specific performance issues raised." These statements are and were completely belied—and contradicted by—the factual evidence that Plaintiff provided Papa and the so-called "investigator" during her interview. A true and accurate copy of Ms. Gupta's March 23, 2022, email is attached hereto as *Exhibit A*.

87. Ms. Gupta then stated the following: "However, we want to make clear that we do not condone unprofessional behavior. First, after you complained to Andrew [Parker] about Chuck [Hector], Andrew gave Chuck feedback about his behavior. If Chuck's behavior has not changed, you should let us know immediately. Second, it was inappropriate for Chuck to tell you to bring

concerns to him first, and we will provide Chuck with that coaching.  You are encouraged to raise concerns with anyone in management or in the People organization with whom you feel comfortable." *Exhibit A.*

88.     Ms. Gupta's March 23, 2022, email revealed to Plaintiff that Papa, through its investigation, had confirmed that Mr. Hector instructed Plaintiff to file her complaints directly with Mr. Hector moving forward, thus bypassing human resources and outside administrative agencies, and it also revealed to Plaintiff that Papa had found this conduct to be "inappropriate" and to warrant remedial action.

89.     Ms. Gupta's March 23, 2022, email also revealed to Plaintiff that, despite knowing about Mr. Hector's "inappropriate" conduct for well over a month, Papa had still not taken any remedial action against Mr. Hector, and it revealed that Papa, at some point after March 23, 2022, might provide Mr. Hector with an unspecified form of "coaching."  Upon information and belief, such "coaching" has not occurred.

90.     Papa's delayed investigation and its failure to implement any remedial action against Mr. Hector for his inappropriate and unlawful conduct allowed Mr. Hector's mandatory moratorium on Plaintiff's internal and external complaints of gender/sex-based discrimination, harassment, and retaliation to remain in effect through March 23, 2022—thus perpetuating the hostile work environment that persisted through such time.

91.     Ms. Gupta's March 23, 2022, email was silent about the status of Papa's investigation, if any, into Plaintiff's various other reports of and opposition to gender/sex-based and sexual-orientation-based harassment, discrimination, and retaliation concerning Plaintiff and/or Plaintiff's co-workers, and the alleged assault that she reported concerning her co-worker.

92.     Plus, Ms. Gupta's stated rational for Plaintiff's effective pay freeze was pretextual considering it was inconsistent with previous information that Papa had conveyed to Plaintiff, which made clear to Plaintiff that her annual bonus and her merit pay increases were separate and distinct benefits, which were not inversely proportional to one another.

93.     Moreover, Plaintiff was a member of the management team responsible for awarding annual merit-based pay increases within her department at Papa, and at no time did Papa ever inform Plaintiff that she was permitted to take annual bonuses into consideration when awarding merit-based pay increases.

94.     It illogical for Papa to say, on the one hand, that Plaintiff's "incredible" and "impressive" performance as a "perfectly skilled leader" warranted her receiving a near-maximum annual bonus, while saying, on the other hand, that Plaintiff's same stellar performance somehow warranted the lowest possible merit pay increase available, which, when the two were combined, amounted to a net pay freeze.

95.     Ms. Gupta's statement was also pretextual because, when Plaintiff confronted Mr. Hector about this issue, he openly admitted that he retaliated against Plaintiff for raising a complaint with Mr. Parker, and at no time did Mr. Hector indicate that he lowered Plaintiff's merit-based pay increase due to the annual bonus she received. Papa and their purported "investigator" concocted this false and irrational reasoning only after Plaintiff raised her complaint, and they did so to enable Mr. Hector to continue engaging in his gender/sex-based and sexual-orientation-based harassment, discrimination, and retaliation against Plaintiff and her co-workers.

96.     Ms. Gupta's March 23, 2022, response (including, but not limited to, her statement that Mr. Hector would undergo some form of purported "coaching" at some unspecified date in the future as a result of his admittedly "inappropriate" instruction for Plaintiff to file all complaints

directly with him) was unreasonable and wholly ineffective because Mr. Hector's gender/sex-based harassment, discrimination and retaliation continued unchecked, and got worse for Plaintiff throughout March 2022, including during the period of March 3, 2022 through March 30, 2022.

**Plaintiff's Additional Complaints to Human Resources on March 28 and 30, 2022**

97.    Within days of Ms. Gupta's March 23, 2022, email to Plaintiff – which purported to lift Mr. Hector's "inappropriate" ban on Plaintiff filing complaints against him and which invited Plaintiff to "Please contact me immediately if you believe that anyone is retaliating against you for making this complaint or participating in this investigation" – Plaintiff filed another internal complaint against Mr. Hector.

98.    Specifically, Plaintiff contacted Ms. Gupta on March 28, 2022, to discuss the continued and worsening gender/sex-based harassment, discrimination, and retaliation she was experiencing from Mr. Hector.

99.    Despite Ms. Gupta's purported assurances that "[e]veryone who participated in the investigation has been informed that Papa has a no retaliation policy and they will be subject to disciplinary action if they engage in retaliation," Mr. Hector continued to engage in gender/sex based harassment, discrimination, and retaliation against Plaintiff, including during the period after March 3, 2022.

100.    For example, Mr. Hector continued to purposefully exclude Plaintiff from important internal and external meetings and other tasks involving topics she was responsible for delivering on as part of her role, including, but not limited to, meetings with clients and potential clients.

101.    These meetings included internal meetings with executives and other employees of Papa, as well as external meetings with current and potential clients of Papa. Mr. Hector also

intentionally took assignments and responsibilities that fell under her position as Executive Vice President of Client Success and assigned them to others at Papa, including the aforementioned similarly-situated male Executive Vice President.

102.    For example, Mr. Hector reassigned an important project that impacted the entire Client Success team, and therefore was under Plaintiff's responsibility, to a lower-level executive, Ms. Andrea Elmore, SVP of Client Success, without notice to Plaintiff. In doing this, it not only removed Plaintiff from the assignment responsibility, but it also undermined Plaintiff's authority over the strategic direction of the project resulting in lack of credibility with her team, the client, and her peers.  As another example, Mr. Hector excluded Plaintiff from upsell opportunity communications within the Client Success portfolio of clients and instead involved the aforementioned male Executive Vice President to work on these lucrative revenue opportunities, pursuant to Mr. Hector's stated belief that men are better equipped than women when it comes to sales.

103.    Mr. Hector's conduct intentionally undermined and usurped Plaintiff's authority as a female Executive Vice President and showed Plaintiff, along with her team and her clients and potential clients, that Plaintiff was not in charge.  Mr. Hector's conduct also set Plaintiff up for failure in delivering on the essential tasks of her position, which was detrimental to Plaintiff's ability to succeed and to advance as a female executive at Papa.

104.    Mr. Hector made these decisions, which were known to and condoned by Papa: to perpetuate his paternalistic and stereotypical beliefs that favored men over women in the workplace, which he had expressed to Plaintiff and others on numerous occasions; to punish Plaintiff for reporting his gender/sex-based and sexual-orientation-based harassment, discrimination, and retaliation regarding Plaintiff and her co-workers and the alleged assault of her

co-worker; and to continue his efforts in dissuading Plaintiff from reporting (internally and externally) additional complaints of gender/sex-based and other unlawful harassment, discrimination, and retaliation that he continued to engage in at Papa against Plaintiff and/or her co-workers.

105.    Plaintiff informed Ms. Gupta during their March 28, 2022, meeting that Plaintiff did not feel "physically or emotionally safe" in Mr. Hector's presence as a result of his continued and worsening gender/sex-based harassment, discrimination, and retaliation.

106.    In addition to the gender/sex-based harassment, discrimination, and retaliation Plaintiff had already endured at the hands of Mr. Hector, Plaintiff was scheduled to attend a business trip with Mr. Hector in South Carolina in or around April of 2022, and Plaintiff feared that Mr. Hector would subject her to further acts of gender/sex-based harassment, discrimination, and retaliation without Papa implementing effective remedial measures to prevent his misconduct. Plaintiff expressed her fear regarding this upcoming trip during her meeting with Ms. Gupta.

107.    Plaintiff's fear was legitimate and reasonably based on the gender/sex-based harassment, discrimination, and retaliation Plaintiff had already endured from Mr. Hector and the gender/sex-based harassment, discrimination, and retaliation (and alleged assault) that she had reported and opposed concerning her co-workers.

108.    In addition, Plaintiff was aware, based on what Mr. Hector had previously told her, that Mr. Hector had been accused by a human resources representative of engaging in gender/sex-based harassment and discrimination on a prior sales trip.  Plaintiff had also been told by a Papa employee that Mr. Hector had inappropriately touched them during a work-related trip.

109.    As a result, Plaintiff reasonably and legitimately feared that Mr. Hector would engage in further acts of gender/sex-based harassment, discrimination, and retaliation against her

during that upcoming sales trip and that he would continue to subject her to a hostile work environment during that trip.

110.     Ms. Gupta appeared to listen to Plaintiff's complaints, but she offered no responses or solutions at that meeting. Instead, Ms. Gupta said she would get back in touch with Plaintiff soon.

111.     The following day, March 29, 2022, Ms. Gupta sent Plaintiff an invitation to meet on March 30, 2022.

112.     On March 30, 2022, Plaintiff met with Ms. Gupta for what she thought was going to be a discussion of her March 28, 2022, complaint against Mr. Hector, including Papa's intended investigation of that complaint and any remedial action that Papa intended to implement as a result of that complaint.

113.     At the beginning of the March 30, 2022, meeting, Plaintiff reiterated that she did not feel physically or emotionally safe reporting to Mr. Hector due to his continued and worsening gender/sex-based harassment, discrimination, and retaliation against her. At no point during this or any other meeting, however, did Plaintiff state, or imply, to Ms. Gupta that she refused to work with or for Mr. Hector or that she had any intention to voluntarily separate from or abandon her employment with Papa.

114.     In response, Ms. Gupta did not offer to investigate Plaintiff's complaint pursuant to Papa's policies or the law, despite Ms. Gupta's invitation for Plaintiff to file such complaints just a few days earlier. Instead, Ms. Gupta informed Plaintiff that Papa was terminating her employment.

115.     Ms. Gupta did not state that Papa was terminating Plaintiff for cause or for any legitimate reason. Instead, Ms. Gupta stated that her "only option in light of [Plaintiff's]

complaints was to terminate [Plaintiff's] employment". It was clear to Plaintiff that, in making this admission, Ms. Gupta was referring to Plaintiff's "complaints" of gender/sex-based harassment, discrimination, and retaliation that she had filed against Mr. Hector.

116. On March 30, 2022, Plaintiff was involuntarily discharged from her employment at Papa without cause.

117. Upon information and belief, Papa replaced Plaintiff with the aforementioned similarly-situated male Executive Vice President.

118. Plaintiff has suffered economic damages, including, but not limited to, equitable damages, compensatory damages, including, but not limited to, emotional distress, loss of enjoyment of life, humiliation, damage to her business and personal reputation and other great harm, as a result of being subject to gender/sex-based harassment, discrimination, and retaliation.

### COUNT I – SEXUAL HARASSMENT
### (Title VII of the Civil Rights Act of 1964, as Amended)

119. Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

120. During Plaintiff's employment, Papa subjected Plaintiff to intentional harassment and a hostile work environment based upon her sex/gender.

121. Plaintiff is a member of a protected class, namely she is female.

122. Papa and its agents, including Mr. Hector, subjected Plaintiff to unwelcome sexual harassment that was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive work environment, and the sexually objectionable conduct was both objectively offensive and subjectively offensive, such that a reasonable person would find it hostile or abusive, and Plaintiff, in fact, did perceive it to be offensive, hostile, and abusive.

123. The unwelcome sexual harassment to which Plaintiff was subjected occurred before March 3, 2022, and it occurred on and after March 3, 2022, through and including at least March 30, 2022.

124. Papa and its agents, including Mr. Hector, subjected Plaintiff to a hostile work environment that was permeated with discriminatory and intentional intimidation, ridicule, and insult based on sex/gender, which altered the terms and conditions of Plaintiff's employment and created an abusive work environment in violation of Title VII.

125. Papa is vicariously liable for the actionable hostile environment created by its agent, Mr. Hector, who, at all relevant times, was Plaintiff's supervisor and manager.

126. As a direct and proximate result of Papa's unlawful sexual harassment in violation of Title VII of the Civil Rights Act of 1964, Section 2000e, *et seq.*, Plaintiff suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

127. As a direct and proximate result of Papa's unlawful sexual harassment in violation of Title VII of the Civil Rights Act of 1964, Section 2000e, *et seq.*, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

## COUNT II- DISCRIMINATION
### (Title VII of the Civil Rights Act of 1964, as Amended)

128. Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

129. Papa and its agents, including Mr. Hector, subjected Plaintiff to intentional discrimination based upon her sex/gender.

130. Plaintiff is a member of a protected class, namely she is female.

131. Plaintiff's work performance was at all times satisfactory.

132. Papa and its agents, including Mr. Hector, intentionally discriminated against Plaintiff based on her sex/gender when it subjected her to multiple adverse employment actions, including, but not limited to, involuntarily terminating her employment, because Papa and its agents, including Mr. Hector, harbored discriminatory animus on the basis of her sex/gender.

133. Papa and its agents, including Mr. Hector, intentionally discriminated against Plaintiff based on her sex/gender and subjected her to disparate treatment with respect to her sex/gender when it treated Plaintiff significantly less favorably than similarly situated male employees with respect to the terms and conditions of their employment.

134. Papa's articulated reasons for the adverse employment actions and/or disparate treatment are pretext for unlawful discriminatory animus based on Plaintiff's gender/sex.

135. As a direct and proximate result of Papa's unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, Section 2000e, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

136. As a direct and proximate result of Papa's unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, Section 2000e, *et seq.*, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including, but not limited to,

humiliation, embarrassment, stress and anxiety, and emotional pain and suffering for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

## COUNT III – RETALIATION
### (Title VII of the Civil Rights Act of 1964, as Amended)

137.    Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

138.    Papa's conduct and employment practices, and those of its agents, including Mr. Hector, constituted impermissible and intentional acts of retaliation in violation of Title VII.

139.    Plaintiff engaged in protected conduct on numerous occasions by, among other things, opposing practices and conduct at Papa that Plaintiff reasonably and in good faith believed to be unlawful under Title VII, by filings complaints of practices and conduct at Papa that Plaintiff reasonably and in good faith believed to be unlawful under Title VII, and by participating in investigations hearings, and/or other proceedings conducted under Title VII.

140.    Plaintiff suffered adverse employment actions that were causally connected to her protected conduct under Title VII.

141.    Plaintiff was subjected to a hostile work environment that was causally connected to her protected conduct under Title VII, including, but not limited to, her protected conduct related to gender/sex-based harassment that she endured and opposed at Papa.

142.    Papa and its agents, including Mr. Hector, subjected Plaintiff to adverse employment action and a hostile work environment because Plaintiff engaged in protected conduct under Title VII.  In fact, Papa and its agents, including Mr. Hector and Ms. Gupta, admitted that they subjected Plaintiff to adverse employment action because of Plaintiff's decision to engage in protected conduct.

143.     As a direct and proximate result of Papa's unlawful and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e, *et seq*., Plaintiff has suffered and continues to suffer monetary and/or economic damages including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

144.     As a direct and proximate result of Papa's unlawful and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e, *et seq*., Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

<u>**COUNT IV – SEXUAL HARASSMENT**</u>
**(Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, As Amended)**

145.     Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

146.     During Plaintiff's employment, Papa subjected Plaintiff to intentional harassment and a hostile work environment based upon her sex/gender.

147.     Plaintiff is a member of a protected class, namely she is female.

148.     Papa and its agents, including Mr. Hector, subjected Plaintiff to unwelcome sexual harassment that was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive work environment, and the sexually objectionable conduct was both objectively offensive and subjectively offensive, such that a reasonable person would find it hostile or abusive, and Plaintiff, in fact, did perceive it to be offensive, hostile, and abusive.

149. The unwelcome sexual harassment to which Plaintiff was subjected occurred before March 3, 2022, and it occurred on and after March 3, 2022, through and including at least March 30, 2022.

150. Papa and its agents, including Mr. Hector, subjected Plaintiff to a hostile work environment that was permeated with discriminatory and intentional intimidation, ridicule, and insult based on sex/gender, which altered the terms and conditions of Plaintiff's employment and created an abusive work environment in violation of M.G.L. c. 151B § 4, *et seq.*

151. Papa is vicariously liable for the actionable hostile environment created by its agent, Mr. Hector, who, at all relevant times, was Plaintiff's supervisor and manager.

152. Papa's sexual harassment policy does not comply with M.G.L. c. 151B, § 3A because, among other things, it failed to provide Plaintiff, and other Papa employees, with: a description of the process for filing internal complaints about sexual harassment and the work addresses and telephone numbers of the person or persons to whom complaints should be made and the identity of the appropriate state and federal employment discrimination enforcement agencies, and directions as to how to contact such agencies.

153. As a direct and proximate result of Papa's unlawful sexual harassment in violation of M.G.L. c. 151B § 4, *et seq.*, Plaintiff suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

154. As a direct and proximate result of Papa's unlawful sexual harassment in violation of M.G.L. c. 151B § 4, *et seq*., Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety,

and emotional pain and suffering for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

## COUNT V- DISCRIMINATION
### (Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, As Amended)

155.     Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

156.     Papa and its agents, including Mr. Hector, subjected Plaintiff to intentional discrimination based upon her sex/gender.

157.     Plaintiff is a member of a protected class, namely she is female.

158.     Plaintiff's work performance was at all times satisfactory.

159.     Papa and its agents, including Mr. Hector, intentionally discriminated against Plaintiff based on her sex/gender when it subjected her to multiple adverse employment actions, including, but not limited to, involuntarily terminating her employment, because Papa and its agents, including Mr. Hector, harbored discriminatory animus on the basis of her sex/gender.

160.     Papa and its agents, including Mr. Hector, intentionally discriminated against Plaintiff based on her sex/gender and subjected her to disparate treatment with respect to her sex/gender when it treated Plaintiff significantly less favorably than similarly situated male employees with respect to the terms and conditions of their employment.

161.     Papa's articulated reasons for the adverse employment actions and/or disparate treatment are pretext for unlawful discriminatory animus based on Plaintiff's gender/sex.

162.     As a direct and proximate result of Papa's unlawful discrimination in violation of M.G.L. c. 151B § 4, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages including, but not limited to, loss of past and future income, compensation,

and benefits for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

163.     As a direct and proximate result of Papa's unlawful discrimination in violation of M.G.L. c. 151B § 4, *et seq.*, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

## COUNT VI - RETALIATION
### (Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, As Amended)

164.     Plaintiff repeats and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

165.     Papa's conduct and employment practices, and those of its agents, including Mr. Hector, constituted impermissible and intentional acts of retaliation in violation of M.G.L. c. 151B.

166.     Plaintiff engaged in protected conduct on numerous occasions by, among other things, opposing practices and conduct at Papa that Plaintiff reasonably and in good faith believed to be unlawful under M.G.L. c. 151B, by filings complaints of practices and conduct at Papa that Plaintiff reasonably and in good faith believed to be unlawful under M.G.L. c. 151B, and by participating in investigations hearings, and/or other proceedings conducted under M.G.L. c. 151B.

167.     Plaintiff suffered adverse employment actions that were causally connected to her protected conduct under M.G.L. c. 151B.

168. Plaintiff was subjected to a hostile work environment that was causally connected to her protected conduct under M.G.L. c. 151B, including, but not limited to, her protected conduct related to gender/sex-based harassment that she endured and opposed at Papa.

169. Papa and its agents, including Mr. Hector, subjected Plaintiff to adverse employment action and a hostile work environment because Plaintiff engaged in protected conduct under M.G.L. c. 151B. In fact, Papa and its agents, including Mr. Hector and Ms. Gupta, admitted that they subjected Plaintiff to adverse employment action because of Plaintiff's decision to engage in protected conduct.

170. As a direct and proximate result of Papa's unlawful and retaliatory conduct in violation of M.G.L. c. 151B § 4, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages including, but not limited to, loss of past and future income, compensation, and benefits for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

171. As a direct and proximate result of Papa's unlawful and retaliatory conduct in violation of M.G.L. c. 151B § 4, *et seq.*, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering for which she is entitled to an award of monetary damages, punitive damages, and injunctive and other relief.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court grant the following relief:

1. a declaratory judgment that the Defendant, in the manner described herein, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B., *et seq.*;

2.      an award of compensatory damages;

3.      an award of punitive damages;

4.      an award of injunctive relief;

5.      an award of reasonable attorneys' fees, costs of litigation to Plaintiff's attorney, and

interest; and

6.      such other further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

The Plaintiff hereby demands a trial by jury on all counts so triable.

## DESIGNATION OF TRIAL COUNSEL

The Plaintiff hereby designates Timothy C. Cavazza, Esq. as trial counsel.

Respectfully submitted,

LESLIE COURTNEY

By her attorneys,


/s/ Timothy C. Cavazza
/s/ Jessica A. Sclafani
Timothy C. Cavazza, Esq. (BBO #670227)
Jessica A. Sclafani, Esq. (BBO #707997)
WHELAN, CORRENTE & FLANDERS LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Phone:  (401) 270-4500
Fax:  (401) 270-3760
tcavazza@whelancorrente.com
jsclafani@whelancorrente.com

Dated:  November 14, 2024

00110408.DOCX