UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LESLIE COURTNEY <br><br>            Plaintiff, <br><br> v. <br><br> PAPA, INC. <br><br>            Defendant. | C.A. No.   1:24-cv-12843-PBS |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS AND COMPEL ARBITRATION

Plaintiff Leslie Courtney ("Plaintiff" or "Ms. Courtney") hereby opposes and objects to *Defendant Papa, Inc.'s Partial Motion to Dismiss and Compel Arbitration* and supporting Memorandum of Law ("Motion"). ECF Nos. 10, 11. In doing so, Ms. Courtney hereby elects to invalidate the Arbitration Agreement attached to the Motion with respect to her entire "case" pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), Pub. L. No. 117-90, 135 Stat. 26, codified at 9 U.S.C. §§ 401-402.

The issue implicated by this Motion (and Plaintiff's election) is whether EFAA operates to keep this entire "case"—including the four counts subject to the Motion—in federal court. The short answer is, unequivocally yes. This result is compelled by EFAA's clear and unambiguous language because Ms. Courtney is "alleging conduct constituting a sexual harassment dispute," (*i.e.*, "a dispute ***relating to*** conduct that is alleged to constitute sexual harassment under" state or federal law) and because her "*case*" "relates to the sexual harassment dispute." *See* 9 U.S.C. §§ 401(4), 402(a). As a result, the Court should deny Defendant's Motion in its entirety.[1]

---

[1] As of the date of this filing, undersigned counsel is unaware of any Court in the First Circuit that has had the occasion to decide the precise issue presented by Defendant's Motion and Plaintiff's election under EFAA. This issue, therefore, appears to be one of first impression for this Court's consideration.

Ignoring EFAA altogether, Defendant concedes that Ms. Courtney "alleges claims for sexual harassment," ECF No. 11, at 3, fn.2, and then proceeds to whistle past the graveyard disregarding the myriad failed attempts by other employers to bifurcate victims' EFAA-claims in a similar piecemeal fashion. Indeed, Defendant failed to discuss the numerous state and federal decisions that have squarely decided the issue presented by its Motion, most of which have followed the sound reasoning of *Johnson v. Everyrealm, Inc.*, 657 F.Supp.3d 535, 561 (S.D.N.Y. 2023) (holding that "where a claim in a case alleges 'conduct constituting a sexual harassment dispute' as defined, the EFAA, at the election of the party making such an allegation, makes pre-dispute arbitration agreements unenforceable with respect to ***the entire case relating to that dispute***.") (emphasis added).  Applying EFAA's plain and unambiguous terms, as *Johnson* and other courts have repeatedly done, this Court should deny the Motion in its entirety and retain jurisdiction to decide the merits of Ms. Courtney's entire case as Congress so intended.

### RELEVANT FACTS DRAWN FROM COMPLAINT[2]

Ms. Courtney incorporates by reference the factual allegations pled in her six-count Complaint as if fully restated herein, *see* ECF No. 1, and we highlight the salient facts from the Complaint that constitute and relate to the sexual harassment dispute at issue in this case.

First, in Counts I and IV, Ms. Courtney alleged claims of sexual harassment, in the form of a hostile work environment, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

---

[2] Defendant styled its Motion as a "Partial Motion to Dismiss and Compel Arbitration," and alternatively, it seeks to "stay" the litigation "as arbitration proceeds." ECF No. 10; *see* ECF No. 11 at 12 (seeking an order "dismissing" Counts II, III, V, and VI and compelling arbitration). Accordingly, "[w]here, as here, a motion to compel arbitration is 'made in connection with a motion to dismiss or stay, [the court] draw[s] the relevant facts from the operative complaint and the documents submitted to the district court in support of the motion to compel arbitration.'" *Freitas v. Comcast Cable Communs. Mgmt. LLC*, C.A. No. 19-12470-PBS, 2020 U.S. Dist. LEXIS 53645, at *2 (D. Mass. March 27, 2020) (quoting *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 55 (1st Cir. 2018)) (brackets by court); *see*, *e.g.*, *Hix v. Dave & Buster's Mgmt. Corp., Inc.*, C.A. No. 3:23-cv-623-AR, 2023 U.S. Dist. LEXIS 234274, at *2-*3 (D. Ore. Nov. 14, 2023) (where party moves to dismiss and compel arbitration, the "court recites the relevant facts as they are alleged in plaintiffs' Complaint and the undisputed facts related to the parties' arbitration agreements.").

2

U.S.C. §§ 2000e *et seq.*, and M.G.L. c. 151B ("Ch. 151B").[3]  Both claims consist of allegations that Ms. Courtney experienced, *inter alia*:

- Unwelcomed sexually explicit and other gender-based comments from her direct supervisor, Charles Hector, *see* ECF No. 1 at ¶¶ 24-43;

- Unlawful directives from Mr. Hector to engage in gender-based discrimination and harassment toward her subordinates, *see id.* at ¶¶ 32-37;

- An unwarranted, retaliatory, and gendered job evaluation by Mr. Hector resulting in a pay freeze, *see id.* ¶¶ 48-57, 66-68;

- Threats, hostility, and other abusive treatment by Mr. Hector when she complained about her discriminatory pay freeze, *see id.* at ¶¶ 58-68;

- An inappropriate directive by Mr. Hector to file complaints directly with him, *see id.* at ¶¶ 62-64, 83-85;

- Exclusion from important internal meetings with executives and other employees at Papa, *see id.* at ¶¶ 81-82, 99-104;

- Exclusion from external meetings with current and prospective clients, *see id.*;

- The removal of essential job responsibilities to undermine her authority and credibility with her team and clients, *see id.*;

- Exclusion from professionally and financially lucrative career opportunities, *see id.*;

- Ineffective and/or non-existent response(s) by Papa to her multiple complaints about Mr. Hector's unlawful, gender/sex-based harassment, discrimination, and retaliation, *see id.* at ¶¶ 44-46, 70-80, 86-91, 96-98, 105-117;

- Intentional and bad faith misconduct by Papa and its agents during the purported investigation of her complaints of gender/sex harassment, discrimination, and retaliation, *see id.* at ¶¶ 77-78, 86; and

- Numerous acts of retaliatory harassment, culminating in her unlawful termination. *See id.* at ¶¶ 51-52, 56, 62, 78, 81-82, 84, 100-104, 114-116.

---

[3] Counts I and IV are not subject to this Motion because Defendant concedes that each count "alleges claims for sexual harassment[.]" ECF No. 11 at 3, fn.2.

Next, in Counts III and VI, Ms. Courtney alleged retaliation, including retaliatory harassment, while employed at Papa under Title VII and Ch. 151B. As an element of those claims, Ms. Courtney alleged that she engaged in various forms of "protected conduct" including, filing multiple complaints with Papa concerning the gender/sex-based harassment that she, as well as her co-workers, experienced from Mr. Hector. *See id* at ¶¶ 44, 55, 71-76, 78, 97-109, 112-113. For example, Ms. Courtney alleged that she "filed another internal complaint against Mr. Hector," when she "contacted Ms. Gupta on March 28, 2022, to discuss the continued and worsening gender/sex-based harassment, discrimination, and retaliation she was experiencing from Mr. Hector." *Id*. at ¶¶ 97-99; *see id.* at ¶¶ 99-104 (describing several examples of Mr. Hector's continued acts of gender/sex-based harassment that contributed to the hostile work environment about which Ms. Courtney complained).

Ms. Courtney also alleged that she "informed Ms. Gupta during their March 28, 2022, meeting that [she] did not feel 'physically or emotionally safe' in Mr. Hector's presence as a result of his continued and worsening gender/sex-based harassment, discrimination, and retaliation," in part, because she had learned from Mr. Hector, and from one of his prior victims, that Mr. Hector had been accused of engaging in gender/sex-based harassment, including inappropriate physical touching, during prior work trips, and she was scheduled to attend a work trip with Mr. Hector in April 2022. *See id.* at ¶¶ 105-109. Ms. Courtney alleged that she engaged in additional protected conduct on March 30, 2022, when, during another meeting with Ms. Gupta, Ms. Courtney "reiterated that she did not feel physically or emotionally safe reporting to Mr. Hector due to his continued and worsening gender/sex-based harassment, discrimination, and retaliation against her." *Id.* at ¶ 113.

Also relevant to her retaliation claims, Ms. Courtney alleged that Papa engaged in adverse employment actions, including that she was involuntarily discharged without cause during her March 30, 2022 meeting with Ms. Gupta, *see id.* at ¶¶ 114-116; and that Ms. Gupta admitted terminating her because of her complaints of gender/sex-based harassment. *See id.* at ¶ 115. Ms. Courtney also alleged a hostile work environment theory of retaliation based on the allegations of gender/sex-based harassment that support Counts I and IV. *See id.* at ¶¶ 141, 168.

In Counts II and V, Ms. Courtney alleged gender/sex-based discrimination under Title VII and Ch. 151B. Those claims are comprised of allegations that Papa subjected Ms. Courtney to adverse employment actions because of her sex/gender and to less favorable terms and conditions of employment than similarly situated male employees. *See id.* at ¶¶ 44-45, 50-54, 62-64, 68, 77-78, 83-84, 92-95, 102, 115-117. These claims are also based on allegations that Papa, and Mr. Hector, harbored discriminatory animus based on sex/gender, which permeate nearly every factual allegation in the Complaint, including those supporting Counts I, III, IV, and VI, discussed above. *See id.* at ¶¶ 17-171.

## STANDARD OF REVIEW

Defendant filed its Motion pursuant to the Federal Arbitration Act ("FAA"). ECF No. 10. More specifically, the Motion directly implicates and is governed by EFAA, which amended the FAA effective March 3, 2022. *See* Pub. L. No. 117-90, 135 Stat. 26; 9 U.S.C. §§ 401-402. Because Ms. Courtney is electing to invalidate any arbitration agreement through which Defendant seeks to compel arbitration of her case (or her claims), this Court should resolve this Motion by applying federal law. *See* 9 U.S.C. § 402(b). Indeed, EFAA expressly provides:

> An issue as to whether this chapter [9 USCS §§ 401 et seq.] applies with respect to a dispute ***shall be determined under Federal law***. The applicability of this chapter [9 USCS §§ 401 et seq.] to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter [9 USCS §§ 401 et seq.]

5

>applies ***shall be determined by a court, rather than an arbitrator*** irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator.

*Id.* (emphasis added).

When deciding a motion to dismiss coupled with a motion to compel arbitration under EFAA, courts have applied a plausible pleading standard under FRCP 12(b)(6), whereby the court evaluates the sufficiency of the allegations in the operative complaint, while "accepting as true all uncontradictory factual allegations" in the complaint "and drawing all reasonable inferences in [the non-moving party's] favor." *Johnson*, 657 F.Supp.3d at 540, fn.1 (citation omitted); *see*, *e.g.*, *Olivieri v. Stifel*, 112 F.4th 74, 78 (2d Cir. 2024) ("we accept as true the allegations in" the operative complaint); *Scoggins v. Menard, Inc.*, C.A. No. 2:24-cv-00377, 2024 U.S. Dist. LEXIS 147638, at *12-*13 (S.D. Ohio Aug 19, 2024) ("At this stage, the Court need not assess the merits of the claims asserted. Rather, . . . the question is whether, when construing all allegations as true and drawing all reasonable inferences in favor of the Plaintiff, the complaint pleads sufficient facts in support of her sexual harassment claim to survive a 12(b)(6) motion to dismiss?").[4]

The plausible pleading standard tracks the EFAA's clear and express statutory language. Indeed, EFAA applies "[n]otwithstanding any other provision of [the FAA], at the election of the person ***alleging*** conduct constituting a sexual harassment dispute or sexual assault dispute," 9

---

[4] Courts deciding EFAA cases on a Motion to Compel only, absent a motion to dismiss, have applied varying standards. *Compare Ding Ding v. Structure Therapeutics, Inc.*, C.A. No. 24-cv-01368-JSC, 2024 U.S. Dist. LEXIS 196549, at *19-*24 (N.D. Cal. Oct. 29, 2024) (applying plausible pleading standard under FRCP 12(b)(6)); and *Delo v. Paul Taylor Dance Found., Inc.*, 685 F.Supp.3d 173, 176, fn.1 (S.D.N.Y. 2023) (same where the "only question before the Court is a question of law: whether the arbitration agreement is enforceable under the recently enacted EFAA"); *with Clay v. Fgo Logistics, Inc.*, No. 3:23-cv-01575-MPS, 2024 U.S. Dist. LEXIS 175470, at *13 (D. Conn. Sept. 27, 2024) (applying summary judgment standard); *Molchanoff v. SOLV Energy, LLC*, C.A. No.: 23cv653-LL-DEB, 2024 U.S. Dist. LEXIS 36400, at *6 (S.D. Cal. March 1, 2024) (same).

U.S.C. § 402(a) (emphasis added); and EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is *alleged* to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4) (emphasis added).

Applying this standard to the allegations in the Complaint, it is clear that Ms. Courtney "is alleging conduct constituting a sexual harassment dispute," *i.e.*, "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. §§ 401(4), 402(a). Indeed, Defendant concedes this point in its Motion. *See* ECF No. 11 at 3, fn. 2 ("Plaintiff also alleges claims for sexual harassment"). Thus, as discussed below, this Court should invalidate the Arbitration Agreement with respect to the entire "case" under EFAA.

## LEGAL ARGUMENT

**I. EFAA APPLIES TO BAR ENFORCEMENT OF THE ARBITRATION AGREEMENT WITH RESPECT TO THIS ENTIRE "CASE" BECAUSE MS. COURTNEY HAS ALLEGED "CONDUCT CONSTITUTING A SEXUAL HARASSMENT DISPUTE" WITHIN THE MEANING OF EFAA.**

The issue implicated by Defendant's Motion is whether EFAA operates to keep Ms. Courtney's entire "case"—including the four counts subject to the Motion—in federal court. Again, the answer is, unequivocally yes. This result is compelled by EFAA's clear and unambiguous language found in 9 U.S.C. §§ 401(4) and 402(a), and it is consistent with the cases that have decided this issue head on, including *Johnson*, 657 F.Supp.3d at 561 ("the Court holds that, where a claim in a case alleges 'conduct constituting a sexual harassment dispute' as defined, the EFAA, at the election of the party making such an allegation, makes pre-dispute arbitration agreements unenforceable with respect to the entire case relating to that dispute."). The statutory analysis and relevant cases (notably absent from the Motion) are discussed below.

7

A. **EFAA's Plain and Unambiguous Language Allows a Person "Alleging a Sexual Harassment Dispute" to Invalidate a Pre-Dispute Arbitration Agreement with Respect to the Entire "Case" that "Relates To" the Sexual Harassment Dispute.**

"It is elementary that in resolving a dispute over the meaning of a statute we begin with the language of the statute itself." *Assured Guar. Corp. v. Carrion*, 919 F.3d 121, 128 (1st Cir. 2019). If the statute's "language itself, the specific context in which that language is used, and the broader context of the statute as a whole" yield a finding that such statute is plain and unambiguous, "the sole function of the courts is to enforce it according to its terms." *Id.* (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). "In conducting this analysis, we begin with the ordinary meaning of the terms as of the time when the statutory provision was enacted." *Hernández-Miranda v. Empresas DÍaz Massó, Inc.*, 651 F.3d 167, 171 (1st Cir. 2011) (citing *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009)). "To determine ordinary meaning, we may consult dictionary definitions, interpretations given to the same terms by judicial construction, and the statutory context in which the words are used." *Id.*; *see also United States v. Lachman*, 387 F.3d 42, 51 (1st Cir. 2004) ("Dictionaries of the English language are a fundamental tool in ascertaining the plain meaning of terms used in statutes and regulations.").

Signed into law on March 3, 2022, while Ms. Courtney was still employed by Papa, EFAA directly amends the FAA to provide:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute … , no predispute arbitration agreement … shall be valid or enforceable with respect to a case which is filed under Federal …or State law and relates to … the sexual harassment dispute.

9 U.S.C. § 402(a); *see* 9 U.S.C. § 2 (arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract ***or as otherwise provided in chapter 4 [9 USCS §§ 401 et seq.]***.") (emphasis added). EFAA defines a "sexual harassment dispute" to mean "a dispute relating to conduct that is

8

alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).  EFAA defines a "predispute arbitration agreement" to mean "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement."  9 U.S.C. § 401(1).  Finally, "[b]y its terms the EFAA applies 'with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act'—i.e., March 3, 2022." *Olivieri*, 112 F.4th at 84 (citing Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022)).[5]

Courts that have previously considered EFAA's plain language in the context of this precise issue and similar facts have determined that "an arbitration agreement extends to ***the entirety of the <u>case</u> relating to the sexual harassment dispute***, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute." *Johnson*, 657 F. Supp. 3d at 559 (emphasis added); *see also Ding Ding*, 2024 U.S. Dist. LEXIS 196549, at *35-*36 ("[W]hen a complaint includes at least one EFAA covered claim, and the plaintiff elects to invalidate the arbitration agreement, the agreement is invalid as to the whole 'case' to the extent the claims relate to the EFAA-covered dispute."); *Clay*, 2024 U.S. Dist. LEXIS 175470, at *33 ("Because Clay's retaliation claim is a sexual harassment dispute, and because the case as a whole relates to that dispute, I conclude that the EFAA bars enforcement of the arbitration agreement as to Clay's entire case."); *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 925 (N.D. Cal. 2023) ("I find that the EFAA permits me to find that the arbitration agreement is unenforceable with respect to Turner's entire case because the core of her case alleges 'conduct constituting a sexual harassment dispute' as defined by the EFAA."); *Liu v. Miniso Depot CA, Inc.*, 105 Cal.App.5th 791, 803 (Cal. App. Ct. 2024) ("[U]nder the EFAA, the plaintiff may not be compelled to arbitrate any of her claims because the 'case' she filed under state law (her

---

[5] Undersigned counsel is not aware of any decision where a court has found EFAA to be unclear or ambiguous.

9

superior court lawsuit) 'relates to …the sexual harassment dispute' in that her complaint contains claims premised on conduct that is alleged to constitute sexual harassment under state law.").

The cogent reasoning about this issue conducted by the district court in *Johnson* has been "widely followed." *See Doe v. Second Street Corp.*, 105 Cal.App.5th 552, 575–76 (Cal. App. Ct. 2024) (collecting cases). In *Johnson*, the plaintiff alleged sexual harassment claims against his employer along with other claims for race discrimination, pay discrimination, and discrimination on the basis of gender, race, and ethnicity under state and federal law. *See id.*, 657 F.Supp.3d at 539-40. The plaintiff and the defendant-employer disputed whether an arbitration agreement should be invalidated with respect to other non-harassment claims alleged in the "case" or whether EFAA required the court to bifurcate and sever the individual claims that did not directly allege sexual harassment. *See id.* at 558.

Finding EFFA's language in § 402(a) to be "clear, unambiguous, and decisive," the court observed Congress's intentional use of the word "case" in § 402(a) to be a notable difference from its use of the words "claim" or "dispute" elsewhere in the same statutory text. *See id.* at 558–59. The court found that § 402(a) "keys the scope of the invalidation of the arbitration clause to the entire 'case' relating to the sexual harassment dispute. It thus does not limit the invalidation to the claim or claims in which that dispute plays a part." *Id.* at 558.

The court then focused on the plain meaning of "case," which it deemed a term "familiar in the law," and cited multiple dictionary definitions of the term, including: "a suit or action in law or equity," *id.* at 558-9 (quoting *Case*, Merriam Webster, https://www.merriam-webster.com/dictionary/case (last visited Feb. 20, 2023)); or "a civil or criminal proceeding, action, suit, or controversy at law or in equity." *Id.* at 559 (quoting Black's Law Dictionary (11th ed. 2019)). The court reasoned that the word "case" rather clearly concerns a "legal proceeding

as an undivided whole" and "does not differentiate among causes of action within it." *Id*. Citing Supreme Court precedent, and other cases, to bolster the point, the court succinctly concluded, that a "case" refers "to an overall legal proceeding filed in a court, whereas a 'claim' or a 'cause of action' refers to a specific assertable or asserted right within such a proceeding." *Id*.; *see*, *e.g.*, *Cardoso v. Phx. Ins. Co.*, C.A. No. 1:23-cv-11160-IT, 2023 U.S. Dist. LEXIS 237588, at *9 (D. Mass. Nov. 20, 2023) (dismissing "claims"; holding in abeyance "the remainder of the case.").[6]

As additional support on this point, the court in *Johnson* then explained that Congress used the "narrower" term "claim" within EFAA's same statutory enactment, *see id.* (citing Pub. L. No. 117-90, § 3 (2022)), and that: "Congress, in enacting the EFAA, thus can be presumed to have been sensitive to the distinct meanings of the terms 'case' and 'claim.'" *Id.* at 560 (quoting *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 161 (2018) ("When Congress includes particular language in one section of a statute but omits it in another, th[e] Court presumes that Congress intended a difference in meaning.") (internal alterations omitted)).

The court in *Johnson* also explained that Congress amended the FAA directly through its passage of EFAA, and did so "[n]otwithstaning any other provision of [the FAA]," reasoning:

> That reinforces Congress's intent to override—in the sexual harassment context—the FAA's background principle that, in cases involving both arbitrable and non-arbitrable claims, "the former must be sent to arbitration even if this will lead to piecemeal litigation."

*Id.* at 560 (citing *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011)).[7]

---

[6] *See also Liu*, 105 Cal.App.5th at 803 (explaining how Congress, in enacting the FRCP, differentiated between "claims" for relief in Rules 8, 12, and 15, and the commencement of a "case," which is embodied by the "civil action" or "proceeding" as a whole, as discussed in Rule 1).

[7] By qualifying EFAA's governing directive with the phrase, "[n]otwithstanding any other provision of this title," Congress clearly evidenced its intent to "override" the statutory scheme of the FAA, including any existing judicial interpretations thereof, such as *KPMG LLP*, of which Congress is presumed to be aware, such that arbitration agreements are invalided with respect to an entire "case" alleging conduct constituting a sexual harassment dispute, and are not subject to piecemeal bifurcation. *See id.* at 558-560*; Ding Ding*, 2024 U.S. Dist. LEXIS 196549 at *35-*36; *Doe*, 105 Cal.App.5th at 572-4 (through EFAA, Congress intended "to *contract arbitrability*, not to expand it. In the EFAA context, therefore, a 'heavy presumption' of arbitrability is not appropriate.") (emphasis in original).

The court concluded that "where a claim in a case alleges 'conduct constituting a sexual harassment dispute' as defined, the EFAA, at the election of the party making such an allegation, makes pre-dispute arbitration agreements unenforceable with respect to the entire case relating to that dispute." *Id*. at 561.

The persuasive reasoning in *Johnson*—which has been adopted in state and federal jurisdictions throughout the country—should be followed here. That is, the plain and unambiguous language of EFFA's § 402(a) makes clear that when a plaintiff is "alleging conduct constituting a sexual harassment dispute," a plaintiff may invalidate an arbitration agreement with respect to any "case" filed under Federal or State law that "relates to . . . the sexual harassment dispute."

### B. Ms. Courtney's Complaint Alleges Quintessential Sexual Harassment Disputes Under § 402(a) and §401(4) of EFAA.

As discussed above, Ms. Courtney's complaint contains six separate counts, four of which are subject to this Motion. Although we discuss each count below, we reiterate that EFAA applies to invalidate the Arbitration Agreement with respect to the entire "case" if any one of them alleges "conduct constituting a sexual harassment dispute." *See* 9 U.S.C. § 402(a).

#### 1. Count I & IV (Sexual Harassment – Title VII and Ch. 151B).

In Counts I and IV, Ms. Courtney alleged claims for sexual harassment under federal and state law. Each Count is based on detailed and specific factual allegations that Papa, through its agents, including Mr. Hector, subjected Ms. Courtney to an unlawful hostile work environment based on her gender/sex. *See supra* at 2-3. She specifically alleged that such unlawful conduct continued through her unlawful termination on March 30, 2022, and specifically during the period on or after March 3, 2022. For example:

12

- *See* ECF No. 1 at ¶¶ 83-84 (Mr. Hector instructed Ms. Courtney to file all complaints with him, thus precluding Ms. Courtney from raising additional complaints of harassment through "at least March 23, 2022");

- *See id.* at ¶ 90 ("Papa's delayed investigation and its failure to implement any remedial action against Mr. Hector for his inappropriate and unlawful conduct allowed Mr. Hector's mandatory moratorium on Plaintiff's internal and external complaints of gender/sex-based discrimination, harassment, and retaliation to remain in effect through March 23, 2022—thus perpetuating the hostile work environment that persisted through such time.");

- *See id.* at ¶¶ 86-89, 96-98, 105-117 (further alleging the ineffective and/or non-existent response by Papa to her multiple complaints about Mr. Hector's unlawful, gender-based harassment, discrimination, and retaliation);

- *See id.* at ¶¶ 99-104 (alleging "Mr. Hector continued to engage in gender/sex based harassment . . . against Plaintiff, including during the period after March 3, 2022," and citing several examples of such conduct, including, but not limited to, the exclusion from important internal meetings with executives and other employees at Papa, the exclusion from external meetings with current and prospective clients, the removal of essential job responsibilities to undermine her authority and credibility with her team and clients, and exclusion from professionally and financially lucrative career opportunities); and

- *See id.* at ¶¶ 78, 81-82, 84, 100-104, 114-116 (alleging numerous acts of retaliatory harassment occurring on or after March 3, 2022, culminating in Ms. Courtney's unlawful termination on March 30, 2022).

Understandably, Papa does not challenge the plausibility of Ms. Courtney's sexual harassment claims in Counts I and IV—nor are such claims subject to its Motion. *See* ECF No. 11 at 3, n.2. In fact, Papa concedes that Ms. Courtney "***alleges claims for sexual harassment***[.]" *Id.* (emphasis added). Implicit in that concession is an acknowledgment that EFAA applies to such claims alleging sexual harassment. Regardless, there can be no serious question that Ms. Courtney plausibly pled allegations constituting a sexual harassment dispute that accrued after EFAA's effective date, as Papa's acts which formed and perpetuated the unlawful hostile work environment occurred up through and past March 3, 2022, until at least March 30, 2022, when Papa terminated her for raising sexual harassment complaints. *See Olivieri*, 112 F.4th at 85

(invalidating arbitration agreement with respect to harassment other non-harassment claims and explaining how a hostile work environment claim "reaccrues—it is essentially reborn—with each successive act that is part of that continuing course.").[8]

Accordingly, EFAA applies to Counts I and IV because (i) each sexual harassment claim, by its very nature, "relates" to a "case" in which Ms. Courtney is "alleging conduct constituting a sexual harassment dispute," and (ii) such claims accrued on or after March 3, 2022. For that reason alone, the Arbitration Agreement is unenforceable with respect to this entire "case" following the plain language of EFAA, §§ 401(4), 402(a).

### 2. Counts III & VI (Retaliation – Title VII and Ch. 151B).

Ms. Courtney has also alleged a sexual harassment dispute in both Counts III and VI, which consist of retaliation claims under Title VII and Ch. 151B. As an element of a retaliation claim under Title VII, a plaintiff must have engaged in "protected conduct," either by "formally participating in a Title VII proceeding" or by "opposing suspected workplace discrimination." *Kinzer v. Whole Foods Mkt., Inc.*, 99 F.4th 105, 115 (1st Cir. 2024); *see also Noviello v. City of Boston*, 398 F.3d 76, 88 (1st Cir. 2005) (analyzing same elements of retaliation under Title VII and Ch. 151B). A plaintiff alleging retaliation must also have suffered from an adverse action that is causally linked to the protected conduct. *See id.* The First Circuit has also held that, in addition to discrete adverse acts, such as termination, "under Massachusetts law as under Title

---

[8] The First Circuit also recognizes that the "continuing violation doctrine" applies to sexual harassment claims for hostile work environment, which follows that a claim accrues (and re-accrues) when the last action that perpetuated the hostile work environment occurred. *See Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) (explaining that a hostile work environment is composed of a series of separate acts that collectively constitute one unlawful employment practice, and that "component acts of a hostile work environment claim that occur outside the filing period may be considered for purposes of determining liability."); *see also Quality Cleaning Prods. R.C. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 205 (1st Cir. 2015) (in Title VII cases, "[a]s long as a related act falls within the limitations period, the doctrine allows a lawsuit to be delayed in cases -- such as hostile work environment claims -- in which a course of repeated conduct is necessary before a series of wrongful acts blossoms into an injury on which suit can be brought", and quoting *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015)).

14

VII, subjecting an employee to a hostile work environment in retaliation for protected activity constitutes an adverse employment action (and, thus, triggers the statutory prophylaxis)." *Noviello*, 398 F.3d at 88-91.[9]  Finally, to raise a claim of retaliation, a plaintiff "need not prove that the conditions against which [s]he protested actually amounted to a violation of" the law. *Id.* (quoting *Fantini v. Salem State Coll.*, 557 F.3d 22, 32 (1st Cir. 2009) (alteration in original)). Instead, "[o]ppositional conduct need only rest on a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Id.* (quoting *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999)).

Here, Ms. Courtney has alleged that she engaged in protected conduct under Title VII and Ch. 151B by, *inter alia*, raising complaints related to the hostile work environment that she experienced, which she reasonably believed constituted gender/sex-based harassment under state and federal law—conduct for which she was ultimately terminated. *See*, *e.g.*, ECF No. 1, at ¶¶ 97–118.  Ms. Courtney alleged that she raised at least two such complaints directly to Ms. Gupta (Papa's Head of People) on March 28, 2022, and March 30, 2022—both well after EFAA's enactment date of March 3, 2022.  *See id.*

As for the other two elements of her retaliation claims, Ms. Courtney alleged that she was terminated immediately after raising such complaints and that Ms. Gupta admitted that her "only option in light of [Plaintiff's] complaints was to terminate [Plaintiff's] employment," effective March 30, 2022.  *Id.* at ¶ 115. Ms. Courtney also alleged a hostile work environment theory of

---

[9] Although *Noviello* still appears to be good law for the points cited herein, the case has been overruled insofar as it required a heightened "severe or pervasive" standard for "retaliatory harassment." *See Stratton v. Bentley Univ.*, 113 F.4th 25, 44 (1st Cir. 2024) ("we take the opportunity here to say, definitively, that *Noviello's* standard in the retaliation context is no longer appropriate," and discussing lower threshold); *see also Clifton v. Mass. Bay Transp. Auth.*, 445 Mass. 611, 616 (Mass. 2005) (recognizing hostile work environment retaliation under Ch. 151B).

15

harassment based on the same underlying acts discussed *supra* at pp. 12-14, relating to Counts I and IV. *See* ECF No. 1 at ¶¶ 23–47; 70–90; 95–96; 97–109; 119–127; 145–154, 168.

Unquestionably, then, Ms. Courtney has plausibly pled retaliation claims that allege conduct constituting a "sexual harassment dispute" under the plain language of EFAA such that her entire "case" must remain in federal court.[10]

This conclusion comports with several federal court decisions, which have held that, where a person alleges retaliation based on protected conduct consisting of complaints of sexual harassment, EFAA applies to invalidate the arbitration agreement with respect to the entire "case" at issue, and at least two courts reached this holding in the absence of a direct sexual harassment claim. *See Olivieri*, 112 F.4th at 92 ("retaliation resulting from a report of sexual harassment is relat[ed] to conduct that is alleged to constitute sexual harassment" for purposes of EFAA); *see*, *e.g.*, *Clay*, 2024 U.S. Dist. LEXIS 175470 at *26-*27 (retaliation claim based on complaint of sexual harassment was covered by EFAA as a "sexual harassment dispute," even where direct sexual harassment claim pre-dated EFAA's enactment); *Molchanoff*, 2024 U.S. Dist. LEXIS 36400, at*3-*4 (same); *Hix*, 2023 U.S. Dist. LEXIS 234274, at *23-*24 (retaliation claim based on sexual harassment complaint constitutes a "sexual harassment dispute" under EFAA); *Liu*, 105 Cal.App.5th at 804, fn.4 ("cases have recognized that a claim alleging retaliation for complaining about sexual harassment is a 'sexual harassment dispute.'") (citing *Johnson*, 657 F.Supp.3d at 559). *Cf.*, *Turner*, 686 F.Supp.3d at 927 (employer conceded that retaliation based on harassment complaint is a sexual harassment dispute under EFAA).

---

[10] These retaliation claims also pass EFAA's temporal test because they accrued on or after March 3, 2022, when Papa terminated Ms. Courtney's employment. *See Shervin v. Partners Healthcare Sys.*, 804 F.3d 23, 33 (1st Cir. 2015) ("Under both federal and state law, a cause of action for discrimination or retaliation accrues when it has a crystallized and tangible effect on the employee and the employee has notice of both the act and its invidious etiology.") (citing *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 50 (1st Cir. 1999)).

As a result, Ms. Courtney's gender/sex-based retaliation claims (Counts III and VI), on their own, allege conduct constituting a "sexual harassment dispute" under EFAA and support Ms. Courtney's election to invalidate the Arbitration Agreement with respect to her entire case.

### 3. Counts II & V (Sex/Gender Discrimination – Title VII and Ch. 151B)

Finally, in Counts II and V, Ms. Courtney alleged discrimination based on her sex/gender arising out of various acts of intentional discrimination. Although they do not directly raise claims of sexual harassment or retaliation based on complaints of sexual harassment, like the remaining four counts discussed above, Counts II and V also independently constitute a "sexual harassment dispute" in that they are directly related to, and inseparable from, the other sexual harassment disputes alleged in the complaint. *See* 9 U.S.C. § 401(4) (defining "sexual harassment dispute" as "a dispute *related to* conduct that is alleged to constitute sexual harassment" under state/federal law). Indeed, both the facts and the law supporting Counts II and V are inexorably intertwined with the facts and law supporting the other four counts, which, as discussed, each constitute a "sexual harassment dispute." For example:

- In both Counts II and V (alleging sex/gender discrimination) and in Counts III and VI (alleging retaliation), Ms. Courtney alleged, *inter alia*, that her termination on March 30, 2022, served as an adverse action supporting each respective claim.

- In support of Counts II and V (alleging sex/gender discrimination), Ms. Courtney alleged, *inter alia*, gender/sex-based disparate treatment concerning her terms and conditions of employment at Papa, and she raised those same allegations in support of the hostile work environment alleged in both Counts I and IV (alleging sexual harassment) and Counts III and VI (alleging retaliation).

- In support of Counts II and V (alleging sex/gender discrimination), Ms. Courtney made numerous allegations supporting Papa's gender/sex-based discriminatory bias, and those same allegations support the hostile work environment alleged in Counts I and IV (alleging sexual harassment) and Counts III and VI (alleging retaliation).

Therefore, although EFAA, by its express terms, already applies to invalidate the Arbitration Agreement with respect to this entire "case" – given that Ms. Courtney's has alleged

17

conduct constituting a "sexual harassment dispute" in Counts I, III, IV, and VI – Counts II and V are certainly "relat[ed] to conduct that is alleged to constitute sexual harassment," which, in turn, fits Counts II and V into the definition of a "sexual harassment dispute" under 9 U.S.C. § 401(4) and, thus, works to independently invalidate the Arbitration Agreement under § 402(a).

Cases are in accord with this point as well.  *See Ding-Ding*, 2024 U.S. Dist. LEXIS 196549, at *36 ("Plaintiff's non-sexual-harassment claims are based upon the same underlying facts as her sexual harassment claim," and "[s]o, they all relate to her sexual harassment claim."); *Scoggins*, 2024 U.S. Dist. LEXIS 147638, at *21 (saving disability discrimination claim from arbitration where it was "intertwined" with covered EFAA claim); *Turner*, 686 F.Supp.3d at 926-27 (sex discrimination claim based on unlawful termination was covered by EFAA where it was "substantially related" to claim alleging "sexual harassment dispute" and where it "ar[o]se out of [plaintiff's] gendered experience in the workplace"); *see*, *e.g.*, *Delo*, 685 F.Supp.3d at 179 (EFAA precluded arbitration of various claims, including gender and caregiver discrimination and wage/hour claims, where plaintiff pled a sexual harassment dispute); *Johnson*, 657 F.Supp.3d at 539-540, 561 (same with respect to claims alleging racial and ethnic harassment and IIED); *Liu*, 105 Cal.App.5th at 797-98 (same with respect to claims involving sex, sexual orientation, and gender identity discrimination).

Notwithstanding the foregoing, at least one United States District Court Magistrate Judge has distinguished claims that "relate[] to . . . a sexual harassment dispute," 9 U.S.C. § 402(a), from those non-sexual harassment or assault claims that are factually distinct (and thus wholly unrelated) to the simultaneously filed sexual harassment dispute. *See*, *e.g.*, *Mera v. SA Hosp. Grp., LLC*, 675 F. Supp. 3d 442, 448 (S.D.N.Y. 2023) (compelling wage claims to arbitration where defendant's alleged wage violations affected a "broad group" encompassing "all-non-

exempt" employees). However, to the extent *Mera* relies on *KPMG LLP*, 565 U.S. 18 (2011), as a basis for severing non-arbitrable claims from those that are arbitrable, that ruling is inconsistent with EFAA's plain language because (i) EFAA invalidates arbitration agreements on a "case"-wide basis when a "case" alleges conduct constituting a sexual harassment dispute, and (ii) EFAA's directive applies "[n]otwithstanding any other provision of [the FAA]," including general interpretations of the FAA that pre-dated EFAA's enactment, such as *KPMG LLP*. *See Johnson*, 657 F.Supp.3d at 558 (finding *KPMG LLP* was not applicable to EFAA because it was "overridden by a contrary congressional command" through, *inter alia*, Congress's inclusion of the qualifying phrase, "[n]otwithstanding any other provision of [the FAA]" within § 402(a)).

Moreover, even assuming *arguendo* that *Mera* was correctly decided, the case is inapposite to that presented here. Most significantly, the plaintiff in *Mera*, in addition to asserting a covered "sexual harassment dispute" under EFAA, also alleged "unrelated wage and hour claims" on behalf of "a broad group of individuals in addition to Plaintiff." 675 F.Supp.3d at 447. The Magistrate Judge explained that the plaintiff's individual claims for sexual orientation harassment covered by EFAA did "not relate in any way" to his wage and hour claims filed on behalf of "all non-exempt employees including servers, bartenders, barbacks, waiters, bussers, and food runners among others, employed by Defendants." *Id.* at 448. As a result, the court found that such claims did not "relate to" the sexual harassment dispute under EFAA, and it severed them from the EFAA covered claims and compelled arbitration. *See id.*

Here, by sharp contrast, as explained *supra*, Ms. Courtney's sex/gender discrimination claims are "related to" her sexual harassment and retaliation claims that constitute a "sexual harassment dispute." Indeed, they are based upon the same allegations, which dovetail and intertwine to form and support the same elements of each respective claim. Ms. Courtney's sex

discrimination allegations cannot reasonably be described as "far afield" or "not in any way related" to her sexual harassment dispute. *See id.* Thus, even following the *Mera* court's reasoning, Ms. Courtney's sex/gender discrimination claims would be covered by EFAA because they are "related" to the underlying claims that constitute the "sexual harassment dispute" in that they arise from the same facts and circumstances and involve the same, or similar, elements.

## CONCLUSION

For the foregoing reasons, this Court should find that EFAA applies to invalidate the Arbitration Agreement attached to the Motion with respect to Ms. Courtney's entire case, including the four counts subject to this Motion, and deny Defendant's Motion in its entirety. Ms. Courtney respectfully requests that the Court enter an Order denying Defendant's Motion and retaining jurisdiction over Ms. Courtney's entire case.

> Respectfully submitted,
>
> LESLIE COURTNEY
>
> By her attorneys,
>
> /s/ Timothy C. Cavazza
> /s/ Jessica A. Sclafani
> Timothy C. Cavazza, Esq. (BBO #670227)
> Jessica A. Sclafani, Esq. (BBO #707997)
> WHELAN, CORRENTE & FLANDERS LLP
> 100 Westminster Street, Suite 710
> Providence, RI 02903
> Phone:  (401) 270-4500
> Fax:  (401) 270-3760
> tcavazza@whelancorrente.com
> jsclafani@whelancorrente.com

Dated:  January 16, 2025

00112500.DOCX